UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PEDRO YANES, DULCE ALVAREZ-CHEVEREZ,
MICHAEL RAMSAY, JOEANN KELLY,
RICARDO GOMEZ, DARRYL WEST, JORGE
SANTIAGO, DARYLL HENRY, SANDRA BUCK,
HORACIO ELMAN, JENNIFER BROOKS,
BUDDY CLINE, CARL MALCHOW, ALPHONZO          MEMORANDUM & ORDER
C. BYRD, AARON MATHIS, BONITA                13-CV-2343(JS)(GRB)
GOODMAN, CYNDRELL PARKER, DONALD R.
SANDS, JR., ROBERT WAGNER, DENISE
HOWARD, RONNIE DAVIS, SR., DARRYL
QUEEN, MELVIN PEGUES, EDWIN ROMERO,
DENISE D. FARLEY-RENKEL, LAVERNE
ENGER, MARIA ELENA OSPINA, DIANA
RODRIGUEZ, APRIL QUEROL, EDGAR
CARABALLO, JOSE FIGUEROA, JACOB
ECHEVARRIA, PATRICK O. KANE,
GREGORY SERAFINI, KIM SMITH, KENNETH
BYWATER, DENNIS MINTZ, BRENDA MINTZ,
YOLETTE SZATKOWSKI, MELISSA CARDILLI,
PATRICIA WHITE, LIZABETH FARLEY,
DAMEIAN FLORES, KRYSTAL CAMPELL,
BRETT ADAMS, BERNADETTE CHAPMAN,
DAVE KRUSSOW, CLARENCE EVANS, JOHN
ROES 1-100, and MARY JO ANDERSON,

                        Plaintiffs,

        -against-

OCWEN LOAN SERVICING, LLC; WELLS
FARGO BANK, N.A., individually and
doing business as America's
Servicing Company; BANK OF
AMERICA, N.A.; JPMORGAN CHASE BANK,
N.A.; M&T BANK CORPORATION; PNC
BANK, N.A.; MORTGAGE INVESTORS
CORP.; and NATIONSTAR MORTGAGE, LLC,[1]

                        Defendants.
----------------------------------X

---

[1] The Court has drafted the caption according to how it currently appears on the docket.

```
APPEARANCES
For Plaintiffs:      Michael E. Herskowitz, Esq.
                     Michael Andrew Lehrman, Esq.
                     The Hoffman Law Group, P.A.
                     1999 Flatbush Avenue, Suite 201
                     Brooklyn, NY 11234

For Defendants
Ocwen:               Brian M. Forbes, Esq.
                     Robert Bruce Allensworth, Esq.
                     Robert W. Sparkes, Esq.
                     K&L Gates LLP
                     One Lincoln Street
                     Boston, MA 02111

                     David S. Versfelt, Esq.
                     Kirkpatrick Lockhart Preston Gates Ellis LLP
                     599 Lexington Avenue
                     New York, NY 10022

Wells Fargo:         Allison J. Schoenthal, Esq.
                     Patrick Joseph Dempsey, Esq.
                     Hogan Lovells US LLP
                     875 Third Avenue
                     New York, NY 10022

Bank of America:     Nafiz Cekirge, Esq.
                     120 Broadway, Suite 300
                     Santa Monica, CA 90401

                     Scott Harris Kaiser, Esq.
                     Bryan Cave LLP
                     1290 Avenue of the Americas
                     New York, NY 10104

JPMorgan Chase:      Brian A. Herman, Esq.
                     Katarzyna Mularczyk, Esq.
                     Morgan, Lewis & Bockuis, LLP
                     101 Park Avenue
                     New York, NY 10178

M&T Bank:            S. Robert Schrager, Esq.
                     Carmine Joseph Castellano, Esq.
                     Hodgson Russ LLP
                     1540 Broadway, 24th Floor
                     New York, NY 10036
```

| | |
|---|---|
| PNC Bank: | Caroline Kathryn Eisner, Esq.<br>Matthew P. Previn, Esq.<br>Richard Eric Gottlieb, Esq.<br>Buckley Sandler LLP<br>1133 Avenue of the Americas, Suite 3100<br>New York, NY 10036 |
| Mortgage Investors: | Michael Y. Kieval, Esq.<br>Jason Wayne McElroy, Esq.<br>Weiner Brodsky Kider PC<br>1300 19th Street, NW, Fifth Floor<br>Washington, DC 20036 |
| Nationstar: | Bradley L. Mitchell, Esq.<br>Constantine D. Pourakis, Esq.<br>Stevens & Lee, P.C.<br>485 Madison Avenue<br>New York, NY 10022 |

SEYBERT, District Judge:

Currently pending before the Court is a motion to sever and/or dismiss by defendants Bank of America, N.A.; JPMorgan Chase Bank, N.A.; M&T Bank; Mortgage Investors Corp.; Nationstar Mortgage, LLC; Ocwen Loan Servicing, LLC; PNC Bank National Association; and Wells Fargo Bank, N.A. (collectively "Defendants"). For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND[2]

This action was initially commenced on April 17, 2013 by fifty-four named plaintiffs and "John Roes 1-100" against thirteen defendants. Since then, various parties have been

---

[2] The following facts are drawn from the Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

3

voluntarily dismissed. Presently remaining are claims by plaintiffs Pedro Yanes ("Yanes"), Dulce Alvarez-Cheverez, Michael Ramsay, Joeann Kelly, Ricardo Gomez, Darryl West, Jorge Santiago, Daryll Henry, Sandra Buck, Horacio Elman, Jennifer Brooks, Buddy Cline, Carl Malchow, Alphonzo C. Byrd, Aaron Mathis, Bonita Goodman, Cyndrell Parker, Donald R. Sands, Jr., Robert Wagner, Denise Howard, Ronnie Davis, Sr., Darryl Queen, Melvin Pegues, Edwin Romero, Denise D. Farley-Renkel, Laverne Enger, Maria Elena Ospina, Diana Rodriguez, April Querol, Edgar Caraballo, Jose Figueroa, Jacob Echevarria, Patrick O. Kane, Gregory Serafini, Kim Smith, Kenneth Bywater, Dennis Mintz, Brenda Mintz, Yolette Szatkowski, Melissa Cardilli, Patricia White, Lizbeth Farley, Dameian Flores, Krystal Campbell, Brett Adams, Bernadette Chapman, Dave Krussow, Clarence Evans, Mary Jo Anderson, and John Roes 1-100 (collectively "Plaintiffs") against Defendants as alleged in the Amended Complaint.

Plaintiffs are homeowners who assert that Defendants committed various "illegal" acts in the creation and servicing of their home mortgage loans. (See generally Am. Compl., Docket Entry 60.) Plaintiffs allege that, during the origination of their loans, Defendants offered terms that Plaintiffs would not have accepted had it not been for Defendants' misrepresentations. (Am. Compl. ¶ 33.) Moreover, Defendants did not require sufficient financial documentation, and

4

ultimately provided mortgages unsuitable to Plaintiffs' incomes. (Am. Compl. ¶¶ 37, 39.)

Although Defendants offered various types of loans, they did not convey the long-term consequences of those loans to Plaintiffs. (Am. Compl. ¶ 43.) For example, Defendants "marginalized" the consequences of negatively amortized loans, downplaying the difficulties of refinancing and the increased amount of principal. (Am. Compl. ¶¶ 44-45.) Despite the disadvantages of certain loans to homeowners, Defendants encouraged their personnel to market them due to the financial benefits they stood to gain. (Am. Compl. ¶¶ 46-49.) According to Plaintiffs, they entered into these loans based upon Defendants' misrepresentations and omissions. (Am. Compl. ¶¶ 49-53.)

Ultimately, Plaintiffs defaulted on their mortgage payments and requested loan modifications through Defendants. (Am. Compl. ¶¶ 2-3.) Defendants ignored Plaintiffs' requests or provided Plaintiffs with application materials for a modification. (Am. Compl. ¶ 4.) They represented to Plaintiffs that after completion of the materials, Plaintiffs would be provided terms to make payments under a "trial modification." (Am. Compl. ¶ 5.) If Plaintiffs made those payments, there would be a permanent modification. (Am. Compl. ¶ 5.)

Plaintiffs allege that they accepted Defendant's loan modification offers and began performance, thus forming a contract. (Am. Compl. ¶ 7.) Specifically, the Amended Complaint asserts that "Plaintiffs either provided all of the requested documentation in support of their loan modification application to Defendants, and otherwise met all the conditions precedent pursuant to a trial modification offer, or attempted to do so in good faith, but faced substantial interference from Defendants." (Am. Compl. ¶ 8.) Where Plaintiffs faced substantial interference, it was because Defendants were essentially "shepherding Plaintiffs into foreclosure" through an "onerous" and "complicated" process. (Am. Compl. ¶ 9.)

Moreover, in instances where Plaintiffs did provide documentation, "Defendants still sent missing documentation requests." (Am. Compl. ¶ 10.) This was so even when Plaintiffs provided the documents on several occasions and was the result of a policy to burden Plaintiffs' compliance with modification terms. (Am. Compl. ¶¶ 10-11.)

In addition, Plaintiffs allege that they were denied trial modifications on baseless claims regarding financial status. (Am. Compl. ¶ 12.) "In cases where trial modification was not given, Defendants either gave no explanation for the denial, or alleged that Plaintiffs did not provide the necessary documentation for processing or review." (Am. Compl. ¶ 13.)

Plaintiffs allege that Defendants had a financial incentive to encourage foreclosure or short sale, rather than loan modification. (Am. Compl. ¶¶ 14-16.) Where Plaintiffs were able to meet the conditions of modification, they were given terms to make payments on a trial basis, but ultimately denied permanent modification nonetheless. (Am. Compl. ¶¶ 14-15.) Even "[w]hen a permanent modification was granted, Defendants included such disadvantageous terms that ultimately rendered Plaintiffs' performance impossible . . . ." (Am. Compl. ¶ 17.)

Furthermore, under the Home Affordable Modification Program ("HAMP") lenders must conduct a Net Present Value ("NPV") calculation of the property as modified and unmodified. (Am. Compl. ¶ 23.) "When a modification has an NPV equal to, or greater than, the amount likely to be obtained from sale in foreclosure, lenders must offer a modification. However, Defendants' CDS/CDO ["Credit Debt Swap" and "Collateralized Debt Obligations"] holdings create a financial offset beyond the amount that could reasonably be obtained through sale in foreclosure." (Am. Compl. ¶ 23.) Thus, "Defendants have thus created an alarming conflict of interest as part of their loss-sharing agreements in the securitization of mortgages, incentivizing them to negotiate with the Plaintiffs in bad faith." (Am. Compl. ¶ 20.) Moreover, Defendants do not set

7

specific standards for determining who will be granted loan modifications. (Am. Compl. ¶ 25.)

Plaintiffs assert the following causes of action: (1) Count One: Breach of Contract; (2) Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Count Three: Promissory Estoppel; (4) Count Four: Fraudulent Concealment; (5) Count Five: Fraud for Demanding and Collecting Monthly Note Payments under False Pretenses; (6) Count Six: Violations of State Consumer Protection Statutes; (7) Count Seven: Violations of the Federal Truth in Lending Act ("TILA"); (8) Count Eight: Unjust Enrichment; (9) Count Nine: Fraud in the Inducement; and (10) Count Ten: Violations of the Real Estate Settlement Procedures Act ("RESPA").

## DISCUSSION

Defendants now move to sever Plaintiffs' claims and to dismiss the Amended Complaint. The Court will first address the issue of severance before turning to Defendants' motion to dismiss.

I. Severance

   A. Federal Rule of Civil Procedure 20

      1. Legal Standard

Rule 20(a)(1) permits the joinder of multiple plaintiffs in an action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or

arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." F<small>ED</small>. R. C<small>IV</small>. P. 20(a)(1). These elements are preconditions and both must be met for joinder to be proper. Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) ("As is clear from the plain language of [the Rule], both criteria must be met for joinder to be proper."). While "[t]he requirements of Fed. R. Civ. P. 20(a) are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding, the requirements of the rule still must be met and constrain the Court's discretion." Kalie v. Bank of Am. Corp., --- F.R.D. ----, 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (alteration in original) (internal quotation marks and citation omitted). "If a court concludes that [parties] have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever [those] parties . . . from the action." Id.

In determining whether claims arise out of the same "transaction" or "occurrence" under Rule 20(a), "courts are to look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy

9

and fairness dictate that all the issues be resolved in one lawsuit.'" Id. (quoting United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979)). Plaintiffs bear the burden of demonstrating that joinder is proper under Rule 20(a). Deskovic, 673 F. Supp. 2d at 159.

2. Application

Here, the claims of Plaintiffs--forty-nine individuals with properties in numerous states--do not arise out of the same transaction or occurrence. Plaintiffs raise several arguments in opposition, primarily asserting that, to the extent that courts have severed claims in mortgage-related cases, those cases involve loan origination and not loan modification. The Court disagrees.

Recently, the undersigned issued an Order severing the plaintiffs in an action involving claims regarding mortgage loan modification and the same Plaintiffs' counsel. See generally D'Angelis v. Bank of Am., N.A., No. 13-CV-5472, 2014 WL 202567 (E.D.N.Y. Jan. 16, 2014). There, as here, the Court notes that it is well-settled that separate loan transactions are separate "transactions or occurrences" and generally are not sufficiently related to constitute a "series of transactions or occurrences" within the meaning of Rule 20(a)(1). See id. at *2 (collecting cases). Moreover, even claims asserted by separate plaintiffs against a common defendant do not arise out of the same

"transaction" or "occurrence."  See id. at *2 (quoting Kalie, 2013 WL 4044951, at *4).  In any event, the Amended Complaint also includes claims regarding loan origination, and not solely loan modification.  (See Am. Compl. ¶¶ 33-42.)

The Court takes this opportunity to note that several courts across this District have ordered severance in similar actions--and rejected similar arguments in opposition--involving Plaintiffs' counsel.  See, e.g., Martin v. Bank of Am., N.A., No. 13-CV-2350, 2014 WL 977653 (E.D.N.Y. Mar. 12, 2014); Green v. Citimortgage, Inc., No. 13-CV-2341, 2013 WL 6712482 (E.D.N.Y. Dec. 18, 2013); Traina v. HSBC Mortg. Servs., Inc., No. 13-CV-2336, 2013 WL 6576856 (E.D.N.Y. Dec. 12, 2013).  Accordingly, the claims of all Plaintiffs, with the exception of the first-named plaintiff, Pedro Yanes, are SEVERED pursuant to Rule 20 and DISMISSED WITHOUT PREJUDICE to commencing a separate action.

B. Federal Rule of Civil Procedure 21

Finally, even if Plaintiffs satisfied Rule 20(a), the Court would reach the same result in exercising its discretion under Rule 21 of the Federal Rules of Civil Procedure.  Rule 21 provides, in relevant part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party . . . [and] sever any claim against any party."  FED. R. CIV. P. 21.

In deciding whether to sever a claim under Rule 21, courts generally consider, in addition to the preconditions set forth in Rule 20(a): "[1] whether settlement of the claims or judicial economy would be facilitated; [2] whether prejudice would be avoided if severance were granted; and [3] whether different witnesses and documentary proof are required for the separate claims." Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 333 (S.D.N.Y. 2013) (quoting Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011)). "A court should consider whether severance will 'serve the ends of justice and further the prompt and efficient disposition of litigation.'" Crown Cork, 288 F.R.D. at 332 (quoting T.S.I. 27, Inc. v. Berman Enters., Inc., 115 F.R.D. 252, 254 (S.D.N.Y. 1987)); see also In re Ski Train Fire in Kaprun, Austria, on November 11, 2004, 224 F.R.D. 543, 546 (S.D.N.Y. 2004).

Here, Plaintiffs' individual claims will require distinct witnesses and documentary proof. Kalie, 2013 WL 4044951, at *6 (finding that judicial economy was not served by joining mortgage-related claims because "each plaintiff's claims implicate distinct loans, locations, dates and personnel"). Furthermore, settlement of the claims is likely to be facilitated if the claims relating to separate mortgage transactions are litigated separately. See Adams v. U.S. Bank,

12

N.A., No. 12-CV-4640, 2013 WL 5437060, at *4 (E.D.N.Y. Sept. 27, 2013). In addition, "[a] joint trial could lead to confusion of the jury and thereby prejudice defendants." Kalie, 2013 WL 4044951, at *6 (citation and internal quotation marks omitted). Thus, for these reasons, the Court also finds that the Rule 21 factors require severance of all claims besides those of the first-named plaintiff, Pedro Yanes.

II. Dismissal

Defendants further move to dismiss all of Yanes's claims with prejudice pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6).[3] The Court will first set out the applicable legal standards before turning to the merits of Defendants' motion.

A. Legal Standards

1. Under Rule 12(b)(6)

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under the now well-established Iqbal/Twombly standard, a

---

[3] More accurately, Defendants moved to: "(1) dismiss misjoined Plaintiffs without prejudice, and dismiss all claims of the first-named Plaintiff, Pedro Yanes, with prejudice, or alternatively, (2) dismiss the Amended Complaint as to all Plaintiffs with prejudice." (Defs.' Br., Docket Entry 69, at 1.) Given the broad nature of the Amended Complaint and the lack of any allegations specific to the individual Plaintiffs and individual Defendants, the Court cannot dismiss all claims with prejudice.

13

complaint satisfies Rule 8 only if contains enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

This "plausibility standard," which governs motions to dismiss under Rule 12(b)(6), is governed by "[t]wo working principles." Iqbal, 556 U.S. at 670, 678; accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 (a pleading that offers "labels and conclusion" or "naked assertion[s]" devoid of "further factual enhancement" does not satisfy Rule 8). Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

## 2. Under Rule 9(b)

To state a claim sounding in fraud or mistake, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard: "[A] party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Second Circuit has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," in order to survive a motion to dismiss. Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (internal quotation marks omitted).

## B. Analysis

Defendants preliminarily assert that the Amended Complaint should be dismissed because Plaintiffs have provided only a generalized pleading that "lumps together" Plaintiffs' individualized claims against separate defendants. (Defs.' Br. at 9 (citation and internal quotation marks omitted). The Court agrees.

Having severed all of the claims except those of plaintiff Yanes, the deficiencies of the Amended Complaint are apparent. In the fifty-six page Amended Complaint, the only allegations specific to Yanes are:

15

> Plaintiff Pedro Yanes is an individual and resident of the State of New York. Plaintiff Yanes owns the premises known as and located at 8 E. Maple Street, Central Islip, New York 11722. Plaintiff Yanes executed a promissory note to GMAC Mortgage, LLC, which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Ocwen Loan Servicing, LLC. Plaintiff Yanes applied for a loan modification from Defendant Ocwen on or about February 2013, and submitted a QWR to Defendant Ocwen on or about November 2012. Plaintiff Yanes alleges wrongdoing to Defendant Ocwen as detailed throughout this complaint.

(Am. Compl. ¶ 60.)

However, the Amended Complaint alleges various scenarios, some of which necessarily do not apply to Yanes. By way of example, Plaintiffs, individually, were at different stages in the loan modification process--some made requests for materials that were denied, some attempted to provide documentation and others were successful in so doing, and some even made modification payments on a trial basis. (See Am. Compl. ¶¶ 4-14.) Moreover, with the exception of Ocwen, the Amended Complaint does not allege Yanes's connection to any of the remaining Defendants.[4] See Kalie, 2013 WL 4044951, at *7

---

[4] As Defendants correctly point out, some allegations pertain to loan origination. However, Yanes alleges only that he executed a promissory note with GMAC, which has been voluntarily dismissed from this action (see Docket Entry 59) and that his mortgage is currently serviced by Ocwen. (Am. Compl. ¶ 60.) While the Court cannot definitively conclude that Yanes's loan origination claims must be dismissed due to the lack of

16

(noting that the Amended Complaint did "not allege a factual connection between Kalie's mortgage and any of the three remaining defendants.").

In fact, the Amended Complaint is replete with legal conclusions and bare recitations of legal elements, rather than factual allegations. Id. ("Each claim lists, in the alternative, numerous ways in which a defendant might have violated the statute in question, but the Amended Complaint does not state, as to Kalie, how any of these three defendants allegedly did so."). Such naked allegations fail to state each and every of Yanes's claims, and certainly fails to allege the requisite specificity for his fraud-based claims. In short, the Amended Complaint wholly fails to allege "what wrongdoing the defendants engaged in vis-à-vis" Yanes. Id.; see also Martin, 2014 WL 977653, at *4 ("Martin's reference to the wrongdoing 'detailed throughout this complaint' does not cure this defect because it is unclear which of many allegations Martin refers to."). Thus, Yanes has not set forth any plausible claims.

Given the sheer lack of factual allegations, the Court will grant Yanes leave to replead. See FED. R. CIV. P. 15(a)(2) (courts should grant leave to amend "when justice so requires"); see also Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d

---

allegations in the Amended Complaint, Yanes faces a serious hurdle in alleging any such claims.

Cir. 2001) (holding that leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility). Although Defendants raise several potentially viable arguments as to why Yanes's claims should be dismissed with prejudice, the Court cannot evaluate them at this time, and justice weighs in favor of amendment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to sever and to dismiss is GRANTED. The claims of all Plaintiffs, with the exception of the claims of first-named plaintiff Pedro Yanes, are SEVERED pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and are DISMISSED WITHOUT PREJUDICE to commencing separate actions. Any plaintiff wishing to commence a separate action must do so within thirty (30) days of the date of this Memorandum and Order. Additionally, the statute(s) of limitations for any claims are tolled for a period of thirty (30) days from the date of this Memorandum and Order.[5]

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

---

[5] Such tolling, however, will not affect claims that were barred by the statute of limitations when this action was originally commenced.

Moreover, Defendants' motion to dismiss the Amended Complaint as to Yanes's claims is GRANTED. However, his claims are DISMISSED WITHOUT PREJUDICE and with leave to replead. If Yanes wishes to file a Second Amended Complaint, he must do so within thirty (30) days of the date of this Memorandum and Order. If he does not do so, his claims will be dismissed with prejudice and the case will be closed.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   April 14, 2014
         Central Islip, NY