```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PEDRO YANES,

                      Plaintiff,           MEMORANDUM & ORDER
                                           13-CV-2343(JS)(ARL)
         -against-

OCWEN LOAN SERVICING, LLC,

                      Defendant.
----------------------------------------X
APPEARANCES
```

For Plaintiff:     Michael E. Herskowitz, Esq.
                   Law Office of Michael E. Herskowitz
                   1999 Flatbush Avenue, Suite 201
                   Brooklyn, NY 11234

                   Michael Andrew Lehrman, Esq.
                   The Hoffman Law Group, P.A.
                   1999 Flatbush Avenue, Suite 201
                   Brooklyn, NY 11234

For Defendant:     Brian M. Forbes, Esq.
                   David S. Versfelt, Esq.
                   Robert Bruce Allensworth, Esq.
                   Robert W. Sparkes, Esq.
                   K&L Gates LLP
                   One Lincoln Street
                   Boston, MA 02111

SEYBERT, District Judge:

      This dispute concerning mortgage loan modifications was commenced on April 17, 2013 by fifty-four named plaintiffs against thirteen defendants. Various parties were dismissed voluntarily and on April 14, 2014, the Court severed and dismissed the claims of all but the first named plaintiff, Pedro Yanes ("Yanes"), finding that each plaintiff's dispute arose out of a separate

transaction.  See Yanes v. Ocwen Loan Servicing, LLC, No. 13-CV-2343, 2014 WL 1428013, at *3 (E.D.N.Y. Apr. 14, 2014).  Yanes was given leave to replead and he filed a Second Amended Complaint (Second Am. Compl. ("SAC"), Docket Entry 85.)  Defendant Ocwen Loan Servicing, LLC ("Ocwen") now moves to dismiss the Second Amended Complaint.  (Docket Entry 86.)  For the following reasons, Ocwen's motion to dismiss is GRANTED.

## BACKGROUND[1]

Yanes took out a mortgage on his home, which is currently serviced by Ocwen.  (SAC ¶ 5.)  Yanes requested a mortgage loan modification from Ocwen because he was experiencing financial problems.  (SAC ¶ 8.)  He claims, however, that Ocwen engaged in certain "illegal" practices with respect to his loan modification.  Specifically, Yanes claims Ocwen: (1) "ma[de] the loan application process as onerous and complicated as possible," (2) delayed the application process, and (3) eventually offered "such disadvantageous [loan modification] terms that they rendered performance impossible."  (SAC ¶¶ 16-20.)  Yanes claims that under the federal Home Affordable Modification Program ("HAMP"), Ocwen was obligated to modify qualified loans "to reduce the burden to homeowners."  (SAC ¶ 7.)

---

[1] The following facts are taken from the Second Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

2

After requesting a loan modification, Ocwen required Yanes to submit a "loan modification package" and represented that "following the submission and review of [the] completed modification package," Yanes would receive terms for a "trial modification." (SAC ¶ 12.) Yanes understood that if he successfully made monthly payments under the terms of the trial loan modification, he would be given a permanent mortgage modification. (SAC ¶ 12.) By submitting the documents Ocwen requested in the loan modification package, Yanes alleges that he "accepted Defendant's offer" thereby forming a contract. (SAC ¶ 13.)

According to the Complaint, Ocwen delayed the application process and made it onerous by "providing conflicting information . . . regarding what was required" and making Yanes re-submit documents he already sent to Ocwen. (SAC ¶ 16.) Yanes alleges that after he overcame these obstacles, Ocwen provided him with loan modification terms, but the terms "failed to lower [his] monthly payment in any meaningful way" and "did not extend the life of the loan, while burdening him with substantial arrears and penalties." (SAC ¶¶ 20-21.) Unable to make his mortgage payments, Yanes defaulted. (SAC ¶ 22.)

Yanes alleges that Ocwen operated a "fraudulent loan modification program" and merely "purport[ed] to offer the possibility of a loan modification agreement" while actually

3

keeping the loans it serviced in default. (SAC ¶ 38.) Specifically, based on the above facts, Yanes brings claims against Ocwen for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, fraudulent concealment, unjust enrichment, for violations of New York General Business Law § 349, and violations of the Real Estate Settlement Procedures Act ("RESPA"). (SAC ¶¶ 46-101.) Ocwen moves to dismiss all of Yanes' claims. (Docket Entries 86-87.)

## DISCUSSION

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on

4

its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

A. Breach of Contract

Yanes alleges that a contract was formed between Ocwen and himself and that Ocwen breached the contract. "In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011) (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)). To adequately allege the first element, the existence of an agreement, "a plaintiff must plead the provisions of the

5

contract upon which the claim is based." James v. Countrywide Fin. Corp., 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (quoting Howell v. Am. Airlines, Inc., No. 05-CV-3628, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006)). The plaintiff "need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." Id. (citations omitted). "However, the complaint must at least set forth the terms of the agreement upon which liability is predicated by express reference." Id. (internal quotations marks omitted).

Here, Yanes failed to sufficiently plead the terms of the agreement that Ocwen breached. The Amended Complaint states that Ocwen sent Yanes a "modification application package" which required him to "provide documentation" and stated that "following the submission and review of a completed modification package" Yanes would be given "terms to make payments as part of a trial modification." (SAC ¶¶ 11-12.) Yanes characterizes his receipt of Ocwen's modification package as an "offer[]" which he accepted by "performance of the terms specified in Defendant's offer." (SAC ¶ 14.) Yanes further claims that Ocwen breached the contract by making the application process "onerous and complicated" and by eventually offering Yanes "such disadvantageous [modification] terms that they rendered [his] performance impossible." (SAC ¶ 16, 20.) Nowhere in his narrative, however, does Yanes set forth the specific terms of the contract he claims Ocwen breached.

6

It is unclear from the face of the Second Amended Complaint whether Yanes is alleging that Ocwen beached the terms of the trial modification application, the terms of a loan modification agreement, or both. Neither agreement is attached to the Complaint or discussed in sufficient detail to piece together their material terms. Without pleading the terms of the contract or contracts that Yanes relies upon, his claim fails. See James v. Countrywide Fin. Corp., 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (dismissing a complaint that failed to "specifically identif[y] the contract (or contracts) at issue and . . . the terms of the agreement that defendant purportedly breached"); Howell v. Am. Airlines, Inc., No. 05-CV-3628, 2006 WL 3681144, at *4 (E.D.N.Y. Dec. 11, 2006) (dismissing a complaint that failed to "identify the agreement at issue" or "indicate which terms in that agreement were allegedly breached"); Valentini v. Citigroup, Inc., 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) ("Plaintiffs fail to identify what specific provisions of the contract they claim Defendants breached."); Tray-Wrap, Inc. v. Veneman, No. 02-CV-6898, 2004 WL 2346619, at *4 (S.D.N.Y. Oct. 18, 2004) ("[C]onclusory allegations cannot establish the existence of a valid contract."); cf. Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012) (explaining that the plaintiff "attached to her complaint her trial loan modification agreement . . . along with a variety of other

documents produced in the course of the parties' commercial relationship").

Yanes argues that his breach of contract claim should not be dismissed because the pleading requirements of his claim is governed by Rule 9(c) of the Federal Rules of Civil Procedure, which sets forth the standard for pleading conditions precedent. Specifically, Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." FED. R. CIV. P. 9(C). Plaintiff claims that because he adequately pled the performance of certain conditions precedent, he alleged the necessary elements of a breach of contract claim. (Pl.'s Opp., Docket Entry 89, at 2-3.) But Yanes argument misses the point. The Second Amended Complaint does not adequately identify the terms of the contract Ocwen breached. Whether or not Yanes properly alleged that he satisfied certain conditions is irrelevant, since the terms of the contract were not properly pled. Cf. Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639, 646 (E.D.N.Y. 2012) (upholding a breach of contract claim based upon a loan modification offer when the terms of the offer were identified in the complaint).

Yanes' breach of contract claim is also flawed for other reasons. The Amended Complaint fails to allege that Yanes performed his obligation to make mortgage payments, either

pursuant to his original mortgage agreement or a temporary modification agreement. See Nichols v. BAC Home Loans Servicing LP, No. 13-CV-0224, 2013 WL 5723072, at *10 (N.D.N.Y. Oct. 18, 2013) (dismissing a breach of contract claim because, inter alia, the plaintiff failed to allege that he performed by making mortgage payments). Moreover, Yanes does not provide sufficient detail in the Second Amended Complaint to determine whether the agreements he relies upon were written and therefore satisfy the Statute of Frauds. See In re Ne. Indus. Dev. Corp., 513 B.R. 825, 841 (S.D.N.Y. 2014) ("In New York, the modification of a mortgage is 'subject to [the] statute of frauds and accordingly[ ] must be in writing to be enforceable and signed by the party to be charged.'" (alterations in original) (quoting Onewest Bank, FSB v. Davies, No. 16638–11, 2013 WL 846573, at *5 (N.Y. Sup. Ct. Suff. Co. Feb. 22, 2013)). For all of these reasons, Yanes' breach of contract claim is DISMISSED.

B. Breach of the Covenant of Good Faith and Fair Dealing

Ocwen moves to dismiss Yanes' claim for breach of the implied covenant of good faith and fair dealing because Yanes failed to allege the existence of a valid contract. (Def.'s Br., Docket Entry 87, at 7.) The Court agrees. "Under New York law, implicit in all contracts is a covenant of good faith and fair dealing in the course of the contract performance." DBT Gmbh v. J.L. Mining Co., 544 F. Supp. 2d 364, 384 (S.D.N.Y. 2008) (internal

9

quotation marks and citations omitted). Nevertheless, "[a] breach of the implied covenant of good faith and fair dealing is merely a breach of the underlying contract." Kapsis v. Am. Home Mortgage Servicing Inc., 923 F. Supp. 2d 430, 452 (E.D.N.Y. 2013) (citation and internal quotation marks omitted). Thus, absent the existence of a binding agreement, there can be no breach of the implied covenant of good faith and fair dealing. Id.; Arroyo v. PHH Mortgage Corp., No. 13-CV-2335, 2014 WL 2048384, at *9 (E.D.N.Y. May 19, 2014) (stating that the plaintiff "must first allege the existence of a valid contract in order to maintain her claim"). Since Yanes failed to adequately allege the existence of a binding agreement, his claim for beach of the implied covenant of good faith and fair dealing is DISMISSED.

C. Promissory Estoppel

Ocwen also moves to dismiss Yanes' promissory estoppel claim on several grounds. Ocwen argues that Yanes promissory estoppel should be dismissed because (1) it is "vague and conclusory" and (2) it is governed by an express agreement. (Def.'s Br. at 12-13.) Yanes responds that the Second Amended Complaint adequately alleges that Yanes was promised he would receive "reasonable [loan] modification terms" as long as he "completed all submission requirements." (Pl.'s Opp. at 9.)

"Under New York law, the elements of promissory estoppel are (i) a clear and unambiguous promise by the promisor;

10

(ii) reasonable and foreseeable reliance by the promisee; and (iii) an injury to the promisee." Braun v. CMGI, Inc., 64 F. App'x 301, 304 (2d Cir. 2003) (citation omitted); Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995). Here, Yanes has not adequately alleged that Ocwen made him a "clear and unambiguous promise." Winkler v. Friedman, No. 12-CV-3893, 2013 WL 3226763, at *11 (E.D.N.Y. June 25, 2013) (citation and internal quotation marks omitted). Yanes alleges that Ocwen represented that "following the submission and review of a completed modification package, [he] would be given terms to make payments as part of a trial modification." (SAC ¶ 12.) As described in the Second Amended Complaint, Ocwen's commitment was merely an invitation to apply for a trial loan modification, not a promise to provide specific loan modification terms. See Reprosystem, B.V. v. SCM Corp., 727 F.2d 257, 265 (2d Cir. 1984) (no promissory estoppel when obligations "were contingent upon execution and delivery of the formal contract documents"). Wilson v. Dantas, 746 F.3d 530, 538 (2d Cir. 2014) (vague allegation of "assurances" did not amount to a clear and unambiguous promise). Moreover, Yanes admits in the Second Amended Complaint that Ocwen did eventually provide him with trial loan modification terms, but he claims--without elaboration--that the terms were unreasonable. Yanes has not alleged an unambiguous promise that can support an

11

estoppel claim.  His promissory estoppel claim is therefore DISMISSED.

    D. <u>Fraudulent Concealment</u>

Ocwen argues that Yanes' fraudulent concealment allegation should be dismissed because the Second Amended Complaint is devoid of specific allegations sufficient to maintain a fraud claim. (Def.'s Br. at 13.) The Court agrees.

"To state a cause of action for fraud based on misrepresentation, a plaintiff must show an intentional misrepresentation of a material fact resulting in some injury." <u>Malmsteen v. Berdon, LLP</u>, 477 F. Supp. 2d 655, 663 (S.D.N.Y. 2007) (internal quotation marks omitted) (quoting <u>Held v. Kaufman</u>, 91 N.Y.2d 425, 694 N.E.2d 430, 433, 671 N.Y.S.2d 429 (1998)). To maintain a fraud claim based on concealment, a plaintiff must also demonstrate that defendant had a "duty to disclose the material information." <u>See</u> <u>Woods v. Maytag Co.</u>, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011). In addition, Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy this heightened pleading standard, "the allegations should specify the time, place, speaker, and sometimes content of the alleged misrepresentations." <u>Four Seasons Solar Prods. Corp. v. Southwall Techs., Inc.</u>, 100 F. App'x

12

12, 13 (2d Cir. 2004) (internal quotation marks and citation omitted).

Applying these standards, Yanes' allegations come up short. The Complaint states in very general terms that "Defendant used fraud and artifice to keep Plaintiff in default on his mortgage by promising opportunities for loan modification when it had no intention of providing such permanent modification." (SAC ¶ 68.) Moreover, Yanes' claim that Ocwen was engaged in a scheme to keep him in default is based solely upon the conclusory statement that "[u]pon information and belief, Defendant has been operating a fraudulent loan modification program." (SAC ¶ 38.) Conclusory allegations are insufficient to state a claim for fraud. See Arroyo v. PHH Mortg. Corp., No. 13-CV-2335, 2014 WL 2048384, at *9 (E.D.N.Y. May 19, 2014). Because Yanes has not alleged any facts to support his fraudulent concealment claim, it is DISMISSED.

E. Section 349 of the New York General Business Law

Ocwen moves to dismiss Yanes' claim for violation of New York's General Business Law § 349. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a). "To state a claim under Section 349, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" Kapsis,

13

923 F. Supp. 2d at 449 (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)). Consumer-oriented conduct is "conduct that potentially affects similarly situated consumers." Kapsis, 923 F. Supp. 2d at 449 (internal quotation marks and citation omitted). "To satisfy this requirement in the context of a real estate transaction, courts have generally required that a plaintiff allege that the defendant affirmatively and publicly sought transactions with consumers." Hayrioglu v. Granite Capital Funding, LLC, 794 F. Supp. 2d 405, 410 (E.D.N.Y. 2011). "Thus, when courts have found § 349 applicable in the context of real estate transactions, they have usually done so where defendant published advertisements or otherwise solicited the general public." Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 74 (E.D.N.Y. 2010) (collecting cases). It has been established, however, that "[p]rivate contract disputes, unique to the parties . . . [do] not fall within the ambit of [Section 349]." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529, 532 (1995).

Yanes allegations are insufficient to make out the first element of a Section 349 claim because he failed to plead facts showing that the deceptive conduct at issue went beyond his contractual dispute with Ocwen. Yanes argues that he properly pleaded that Ocwen's conduct was directed at consumers by alleging in the Second Amended Complaint that he as well as "consumers at

14

large" were "persuaded by Defendant's marketing to seek mortgage assistance" and that Ocwen misrepresented that a loan modification was a viable option for homeowners, when in fact Ocwen never intended to enter into a loan modification agreement. (Pl.'s Opp. at 14; SAC ¶ 8.) Although Yanes speculates that other consumers were treated similarly to him, he does not allege any facts to support that assertion. See O.K. Petroleum v. Travelers Indem. Co., No. 09-CV-10273, 2010 WL 2813804, at *5 (S.D.N.Y. July 15, 2010) ("In order to survive this motion, Plaintiffs were required to plead facts showing that the deceptive conduct went beyond the contractual dispute between these parties."); Cross v. State Farm Ins. Co., No. 10-CV-1179, 2011 WL 4916534, at *4 (N.D.N.Y. Oct. 17, 2011) ("Although Plaintiff speculates that others have been treated in similar fashion, [his] allegations are insufficient to state a plausible General Business Law § 349 claim."). Therefore, Yanes' claim under Section 349 is DISMISSED.

F. Unjust Enrichment

Ocwen argues that Yanes' unjust enrichment claim should also be dismissed because unjust enrichment is a quasi-contract remedy, which is inapplicable when there is a written agreement. (Def.'s Br. at 20.) In addition, Ocwen argues that Yanes' unjust enrichment allegations fails as a matter of law because they are vague and conclusory. (Def.'s Br. at 20.) The Second Amended Complaint appears to allege that Ocwen was unjustly enriched

15

because it delayed offering Yanes loan modification terms, thereby causing the interest on his mortgage to increase and "strip[ing]" him of equity in his home. (SAC ¶¶ 92, 94.)

To properly plead unjust enrichment, a complaint must state "'(1) that the defendant benefitted; (2) at the plaintiffs' expense; and (3) that equity and good conscience require restitution.'" McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 175 (E.D.N.Y. 2009) (quoting Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006)). Since unjust enrichment is a quasi-contract remedy, it is generally only applicable in the absence of a written agreement. Id. However, "a party is not precluded from proceeding on both breach of contract and quasi-contract theories where there is a bona fide dispute as to the existence of a contract." Curtis Props. Corp. v. Greif Cos., 236 A.D.2d 237, 239, 653 N.Y.S.2d 569, 571 (1st Dep't 1997); see Nakamura v. Fujii, 253 A.D.2d 387, 390, 677 N.Y.S.2d 113, 116 (1st Dep't 1998).

Although there is some dispute about whether a valid contract was ever formed governing Yanes' loan modification, there is no dispute that a valid mortgage agreement existed under which Yanes was required to make mortgage payments. Nevertheless, Yanes claims that a benefit was conferred on Ocwen when his modification application period was wrongfully delayed because the amount of money Yanes owed Ocwen increased. (See SAC ¶ 93.) The problem

16

with his theory, however, is that the primary reason his debt increased during the application period is because he could not make his agreed-upon mortgage payments. (See SAC ¶ 22.) Thus, it is somewhat disingenuous to say Ocwen received a benefit during the application period when it was not receiving Yanes' mortgage payments. Since any alleged benefit Ocwen received was governed by the parties existing modification agreement, Ocwen could not have been unjustly enriched by the conduct Yanes complains of. See Fitzgerald v. Chase Home Fin., LLC, No. 10-CV-4148, 2011 WL 9195046, at *7 (S.D.N.Y. Feb. 28, 2011). Since Yanes' unjust enrichment claim fails as a matter of law it is DISMISSED WITH PREJUDICE.

   G. RESPA Claim

Finally, Ocwen moves to dismiss Yanes' RESPA allegations. Yanes alleges that Ocwen violated Section 2605 of RESPA by failing to timely and properly respond to a qualified written request ("QWR") that he sent Ocwen. (SAC ¶ 98.) In addition, he claims Ocwen failed to properly respond to Yanes "Notice of Error" pursuant to 12 CFR 1024.35(e)(3). (SAC ¶ 100.)

Congress enacted REPSA to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by [ ] abusive practices that have developed in some areas of the

17

country." 12 U.S.C. § 2601. "Under Section 2605 of RESPA, a debtor may submit a QWR to the servicer of its loan for 'information relating to [ ] servicing.'" Kapsis 923 F. Supp. 2d at 444 (quoting 12 U.S.C § 2601(a)). To survive a motion to dismiss, a plaintiff bringing a Section 2605 claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify actual damages that he or she sustained as a result of defendant's alleged violation(s). Id. Plaintiff's RESPA allegation does not adequately allege the existence of actual damages. Yanes claims he suffered "financial loss and severe mental anguish and emotional distress over facing the loss or possible loss of his home." (SAC ¶ 101.) A conclusory assertion that the plaintiff merely suffered "damages" is insufficient to state claim under RESPA. Cf. Kapsis, 923 F. Supp. 2d at 448 (the allegation that a servicer "misapplied the borrowers' payments on the loan" sufficiently pled actual damages); Hutchinson v. Del, Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (holding that the plaintiffs sufficiently pleaded actual damages when they claimed they suffered "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing") (internal quotation marks omitted). In addition, Yanes does not sufficiently allege how Ocwen's failure to respond to his requests proximately caused his damages. See Bonadio v. PHH Mortg. Corp.,

18

No. 12-CV-3421, 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) ("simply saying that . . . the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused, is not enough to survive a motion to dismiss." (internal quotation marks and citation omitted)). Therefore, Yanes' RESPA claim is DISMISSED.

II. Leave to Replead

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(A)(2) ("The court should freely give leave [to amend] when justice so requires."). "Nonetheless, courts may deny leave to replead where amendment qualifies as futile." Herbert v. Delta Airlines, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). Because the Second Amended Complaint is Yanes' first attempt to plead his individual claims, divorced from the allegations of his former co-plaintiffs, the Court grants Yanes one final opportunity to replead. Yanes is specifically granted leave to replead his breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, fraud, General Business Law § 349 and REPSA claims. Since Yanes' unjust enrichment claim fails as a matter of law, however, it is DISMISSED WITH PREJUDICE.

19

CONCLUSION

For the forgoing reasons, Ocwen's motion to dismiss the Second Amended Complaint is GRANTED. Yanes' unjust enrichment claim is DISMISSED WITH PREJUDICE. Yanes' breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, fraud General Business Law § 349 and REPSA claims are DISMISSED WITHOUT PREJUDICE and with leave to replead. If Yanes wishes to file a Third Amended Complaint he must do so within thirty (30) days of the date of this Memorandum and Order. If he fails to do so, his claims will be dismissed with prejudice.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  12 , 2015
       Central Islip, NY